RADER, ET AL. *v.* BURTON, ET AL.

[No. 18,505.  Filed November 18, 1955.  Rehearing denied January 10, 1956.  Transfer denied March 13, 1956.]

314

*Hamacher & Carroll,* of Crown Point, for appellants.

*George E. Hershman, Robert W. Gericke* and *T. Cleve Stenhouse,* of Crown Point, for appellees.

CRUMPACKER, J.—The appellees sought and were granted a mandatory injunction against the appellants in the Lake Circuit Court whereby they were ordered to undo certain things they had done affecting a levee or dike in the southern part of Lake County, Indiana. Said levee was built in 1908 by order of the Lake Circuit Court and enlarged and strengthened in 1913 by order of the Lake Superior Court in both instances as the result of proper proceedings under the drainage and conservation laws of the State of Indiana. This levee is referred to in the record as "Brown Levee No. 1" and extends in a northeasterly and southwesterly direction across southeastern Lake County and is located somewhat over a mile to a mile and a quarter of a mile north of the Kankakee River and, in general, parallel therewith. It was built to protect lands to the north and west thereof from water which overflows the banks of said river at flood stage. In August of 1952 the appellants installed a pipe about 52 inches in diameter through said levee and, upon the complaint of the appellees filed in the Lake Circuit Court, they were ordered and directed by said court to remove said pipe and restore said levee to its dimensions as fixed and established by the court proceedings above mentioned. From the court's special findings of fact and conclusions of law we gather that this decree was prompted by the conclusion that the appellants' act in opening a $4\frac{1}{2}$ foot hole in said levee was wrongful, without right and unauthorized and, if permitted to remain, the flow of water through said opening will "in times of flood endanger the farm lands of the plaintiffs (appellees) and others north and west of said levee and cause them to become wet and untillable."

Before discussing the merits of this controversy a bit of descriptive background may be helpful. The Kan-

kakee River bounds Lake County on the south and, except where changed by drainage ditches, it is shallow, sluggish and meandering in its course. It flows through a flat, level country and has a fall to the southwest of about one foot to the mile. The land to the north of the river is flat and level for a distance of three to five miles back therefrom and this territory, prior to the construction of various drainage systems, was generally known and referred to as the "Kankakee Marsh" and was subject to frequent and general overflows from the river. The land north of the marsh rises gradually and becomes rolling in contour and is comparatively dry and tillable. The "Kankakee Marsh," in its natural state, was too wet for farming purposes and as early as 1894 a dredged ditch was constructed through it approximately two miles north of the river and roughly parallel therewith. This ditch, known as the "Brown Ditch," empties into another ditch known as the "Singleton Ditch" which in turn empties into the Kankakee River at Monence, Illinois. The Brown Levee heretofore described, was built between said Brown Ditch and the river and since its construction has prevented river water from flowing over the lands north and west of it which, because of said levee and the drainage afforded by the Brown and other ditches has become tillable farm land upon which good crops of corn, wheat, soybeans and hay are raised. The lands to the south and east of said levee, however, are still marshy and covered with water when the river overflows its banks. The appellant, Rader, is the owner of several hundred acres of land lying between the levee and the river and there is evidence in the record tending to prove that the appellants Little and Johnson assisted him in installing the pipe in controversy. The appellees are the owners of land protected by the levee which they assert will

be irreparably injured unless said opening is closed by the restoration of said levee to its original condition.

We think it is fundamental that the extraordinary remedy of mandatory injunction will not be granted where the complainant suffers no substantial injury from the wrongful act of which he complains. *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643, 73 N. E. 625. That being true it seems clear that anyone who is hailed into court for the purpose of compelling him to undo something that he has done ought to be permitted to prove that what he did, even if wrongful, resulted and would result in the future, in no injury to the complainant. There is no evidence in this case indicating that water flowing through the pipe in controversy is discharged directly upon the appellees' lands. In its special finding No. 8 the court found the fact to be that such water flows in a ditch along the east side of the Wabash Valley Railroad embankment into the Brown Ditch and "has caused the general level of the water in the Brown Ditch to rise and in times of flood would endanger" the appellees' lands and "cause them to become wet and untillable." In other words, the court's decree seems to be based on evidence to the effect that when the Kankakee river overflows its banks water passing through said pipe will overtax the capacity of the Brown Ditch and prevent the appellees' lands from draining therein and thus cause them to become too wet for farming. Yet an examination of the record in this case discloses that the court repeatedly rejected competent testimony, offered by the appellants, calculated to prove that such are not the facts.

The appellants produced William Morthland, a civil engineer, familiar with drainage and levee installations

in Lake County, and offered to prove by him that since the construction of the Brown Levee a dike has been built on the north bank of the Kankakee River which is sufficient to contain said river in flood stage. By the same witness the appellants sought to prove the area of the land that would drain through the pipe involved, the volume of water that could flow through the same and that the Brown Ditch would dispose of it without affecting the appellees' lands. By E. D. Nesbitt, a graduate of Purdue and Cornell universities specializing in structural and drainage engineering, the appellants offered to prove that the riverbank dike, as it stood at the time the pipe in controversy was installed, was ample and sufficient to hold said river within its channel at flood stage and that the amount of water flowing through said pipe at any time would not flood the lands, drains and ditches north and west of the Brown Levee nor affect the farmability of the appellees' lands. By several competent witnesses the appellants sought to show that since the Brown Levee was built the channel of the Kankakee River has been deepened and straightened by the construction of the Marble Powers Ditch and that as a result thereof there is little possibility of flood waters ever reaching the Brown Levee.

All this evidence was rejected by the court apparently upon the theory that it constituted a collateral attack upon the judgments of the Lake Circuit and Superior Courts whereby the Brown Levee was ordered built without an opening at the point where the appellants installed the controversial pipe. The court seems to have taken the position that it is of no consequence that the installation of said pipe would not subject the appellees' lands to irreparable injury. That they had no right to alter the adjudicated construction of the

levee without direct legal proceedings for the purpose which they made no effort to effectuate and therefore should be compelled to redress their wrong by restoring the levee to its condition as ordered built by the courts.

We do not conceive such to be the law governing mandatory injunctions. The courts will not enjoin a person to undo an illegal act simply because of its illegality and where the results of the act are *"injuria sine damno."* High on Injunctions, 4th Ed., Vol. 1, Sec. 9. It necessarily follows that proof to the effect that no substantial damage to the appellees' lands followed or could follow the installation of the pipe in question, even if installed illegally, was a vital element of the appellants' defense. The rejected testimony to which we have referred had probative value to that effect and it was harmful error to exclude it. Nor can we follow the appellees in their contention that such evidence constituted a collateral attack upon the judgments establishing the Brown Levee. Its purpose was not to modify, change or set to naught the scope and effect of said judgments in any particular but merely to prove that the appellants' acts, even if in disregard of said judgments, resulted, or could result, in no appreciable harm to the appellees. This they had certainly the right to show.

When a court is asked to compel the undoing of something that has been done it is a familiar principle that the court will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience, expense and damage to the defendant and award relief accordingly. *Weis* v. *Cox* (1933), 205 Ind. 43, 185 N. E. 631; 28 Am. Jur., Injunctions, Sec. 20, p. 213. The court refused to consider this phase of the present suit as it not only rejected all evidence tending

to prove that the appellees would benefit little or not at all through a mandatory writ but also that hundreds of acres of land belonging to the appellant Rader would be ruined if the writ were granted. This also was error.

What we have said amounts to this: A showing that a failure to grant the mandatory relief sought will result in irreparable injury to the appellees is an essential element of their case. *Koss* v. *Continental Oil Co.* (1944), 222 Ind. 224, 52 N. E. 2d 614. The court permitted the appellees to prove such injury but declined all efforts of the appellants to prove the contrary. Such procedure scarcely resulted in a fair trial.

The appellants assert error in many other particulars but we see no reason to discuss them in detail further than to say that, in our opinion, the complaint upon which this case was tried is a good complaint and we believe that the third, fourth and fifth paragraphs of the appellants' answer were properly rejected. Whether the evidence supports the court's special findings pertinent to the issues joined on the second paragraph of answer we do not decide as it is likely that the question will not arise on a second trial.

Judgment reversed and cause remanded with instructions to grant the appellants' motion for a new trial.

Royse, J., not participating.

NOTE.—Reported in 130 N. E. 2d 58.